JOHN THOMAS *v.* MEHADIN K. ARAFEH, SUPER-
INTENDENT, CONNECTICUT VALLEY HOSPITAL

HOUSE, C. J., LOISELLE, BOGDANSKI, LONGO and SPEZIALE, Js.

Argued November 9, 1977—decision released March 21, 1978

*Mary F. Keller,* with whom were *Stephen Wizner,* and, on the brief, *Dennis E. Curtis, Judith Resnik* and, of the District of Columbia bar, *Robert Dinerstein,* for the appellant (plaintiff).

*Paige J. Everin* and *Maurice Myrun,* assistant attorneys general, with whom, on the brief, was *Carl R. Ajello,* attorney general, for the appellee (defendant).

LOISELLE, J. This is an appeal from a Superior Court judgment denying an appeal from a commitment order of the Probate Court for the district of Middletown.

The plaintiff, John Thomas, was admitted to the Connecticut Valley Hospital in April, 1975. On May 20, 1975, after a full hearing, an order of the Probate Court was entered, committing the plaintiff to the hospital, pursuant to General Statutes § 17-178. The order was appealed from and, on November 18, 1975, a trial was held in the Superior Court in Middlesex County. The court concluded that, although an appeal from a commitment order of a probate court involves a trial de novo, the Superior Court's function "is limited to a review of the order of the probate court and a determination of whether the probate court's discretion was legally and reasonably exercised." The court, determining that the Probate Court had not abused its discretion in committing the plaintiff, denied the appeal. From this judgment the plaintiff appeals.[1]

---

[1] The defendant claims that this court is without subject-matter jurisdiction over the case because (1) the appeal was filed late, and (2) the appeal was filed without payment of fees and the posting of security and, therefore, the filing was improper. The defendant concedes that his objections were tardy. This court has held that both late filing and the failure to post a proper bond are "irregu-

The plaintiff's initial claim of error challenges the court's conclusion that its function was limited to a determination of whether the Probate Court, in issuing the commitment order, abused its discretion. We agree with the plaintiff that the court, in so defining its function, was in error.

In *Prince* v. *Sheffield*, 158 Conn. 286, 259 A.2d 621, this court, finding the then-existing rule defining the Superior Court's discretion in probate appeals to be "awkward, inadequate, and confusing" explicitly changed the procedure, establishing as uniform the proposition that "after consideration of all evidence presented on the appeal which would have been admissible in the probate court, the superior court should exercise the same power of judgment which the probate court possessed and decide the appeal as an original proposition unfettered by, and ignoring, the result reached in the probate court." Id., 298; see also *Sklar* v. *Estate of Sklar*, 168 Conn. 101, 110, 357 A.2d 900. In the present case, the trial court failed to address the real issue before it, as to whether, pursuant to General Statutes § 17-178,[2] "the person complained of is mentally ill and a fit subject for treatment in a hospital for mental illness or that he ought to be confined," but rather determined only that the Probate Court did not abuse its discretion in ordering commitment. In this regard, the court erred.

larities" which render the appeal voidable. *VanBuskirk* v. *Knierim*, 169 Conn. 382, 387, 362 A.2d 1334; *Jensen* v. *Nationwide Mutual Ins. Co.*, 147 Conn. 722, 723, 161 A.2d 785. A failure by the defendant to object timely to such irregularities constitutes a waiver of them. *Jensen* v. *Nationwide Mutual Ins. Co.*, supra. Because of the defendant's belated objections, the appeal is not subject to dismissal and this court has proper jurisdiction.

[2] Amended by section 3 of 1977 Public Acts, No. 77-595, effective October 1, 1977.

The defendant asserts that the court would have arrived at the same conclusion had it applied the appropriate rule. It is difficult to determine this with assurance, however, particularly since the court's finding enumerates a variety of testimony by several physicians, without finding as fact particular elements of the testimony. We are constrained, therefore, to order a new trial in the Superior Court.

Although this issue is dispositive of the appeal, additional claims by the plaintiff, which may arise on retrial, will be addressed to facilitate those proceedings. *Loewenberg* v. *Wallace,* 147 Conn. 689, 694, 166 A.2d 150; Maltbie, Conn. App. Proc. § 341. The plaintiff claims error in the court's ruling excluding evidence of the plaintiff's post-probate hearing condition and in its determination that since the constitutional issues were not raised at the probate hearing the plaintiff was barred from raising them on appeal to the Superior Court.

*Prince* v. *Sheffield,* supra, reiterates the established rule that "[i]n an appeal from probate there is a trial de novo in which the appellant has the opportunity to present any evidence which could have been offered in the probate court, whether or not it was actually offered." Id., 294; *Stevens' Appeal,* 157 Conn. 576, 582, 255 A.2d 632. Because evidence pertaining to the constitutionality of the plaintiff's commitment "would have been relevant and material at the hearing in the Probate Court"; *Stevens' Appeal,* supra; the Superior Court is not foreclosed from admitting such evidence by any failure of the plaintiff to submit evidence on this issue at the time of the probate hearing.

A more difficult question arises as to whether the court erred in failing to hear evidence pertaining to the plaintiff's condition as it had evolved in the six months following the probate order. In *Stevens' Appeal,* supra, a case involving an appeal from a probate decree removing the plaintiff as guardian of her minor child, this court held that, in a de novo appeal from a probate order, the Superior Court could not consider those circumstances which had arisen after the probate hearing from which the appeal was taken. The plaintiff argues that *Prince* v. *Sheffield,* decided after *Stevens' Appeal,* impliedly removed this enunciated restriction. We cannot agree with this assertion. The *Prince* opinion was concerned with and limited to the "awkward, inadequate, and confusing" rule which limited certain appeals from probate to the issue of whether there was an abuse of discretion, while other appeals were to determine the ultimate issue without regard to the result reached by the Probate Court. The only law "changed" by the *Prince* decision was that which created a uniform rule of de novo appeals from probate orders. Indeed, the evidentiary restriction relied upon in *Stevens' Appeal* was reiterated in *Hartford Kosher Caterers, Inc.* v. *Gazda,* 165 Conn. 478, 486, 338 A.2d 497, a case involving an appeal from a probate decree ordering the sale of certain real property.

The question, therefore, is not whether the evidentiary limitation of *Stevens' Appeal* was revoked by *Prince* v. *Sheffield* but whether, in an appeal from a probate commitment order, the Superior Court, in addressing the issue of whether commitment is proper, may base its determination on the present condition of the plaintiff rather than on his condition as it existed at the time of the probate

hearing. This issue has never been specifically addressed by this court. We may, therefore, view it as one of first impression.

As we have noted, this court in *Prince* v. *Sheffield* established that in all appeals from probate, the Superior Court is to address the underlying issue without regard to the Probate Court's determination. In appeals involving wills, the disposition of real estate, the approval of an accounting, and the like, the issues involved do not involve ongoing facts requiring reevaluation due to changing circumstances. If a will is determined to be valid, it need not be subjected to determination at a later time as to whether changing circumstances—as opposed to new evidence—have affected its validity. The question to be addressed in an appeal from a commitment order is of a different nature entirely.

Pursuant to General Statutes § 17-178, the issue to be addressed is whether "the person complained of is mentally ill and a fit subject for treatment in a hospital for mental illness." A person's mental status may change over time. Thus, if the de novo nature of a probate appeal is to have any significance in the commitment context, the Superior Court must be allowed to consider the existing condition of the plaintiff. If the court is limited to an evaluation of his condition as it existed at the time of the probate hearing the evidence and testimony must all revert back to his past condition and the court will, of necessity, be deprived of a most critical factor in a commitment determination, that of actually viewing the plaintiff's behavior and demeanor at the time of the hearing.

One of the fundamental reasons given in *Prince* v. *Sheffield,* supra, 293, for allowing on an appeal

from probate a full trial de novo is that "[t]he procedure in our probate courts is informal, strict rules of evidence are seldom followed, many of the probate judges are laymen, and no transcript or other record of any testimony presented is available." In the traditional appeal, the scope of review is limited by the issues raised and the supportive evidence submitted in the lower court. In an appeal from probate, however, the informalities of the probate proceeding are corrected by permitting a full hearing in which new evidence may be submitted. In essence, the parties are entitled to a hearing with all the judicial safeguards inherent in a full court proceeding. In a commitment context, the only way to make this full hearing meaningful is to allow evidence of the plaintiff's condition as it exists *at that time.*

This approach is supported by the statutory and constitutional requirements surrounding an order of commitment. General Statutes § 17-178 allows for commitment only when the existing mental state of the person involved requires it. Because involuntary commitment constitutes an extreme deprivation of liberty, the procedure involved is circumscribed by constitutional requirements of due process. *Specht* v. *Patterson,* 386 U.S. 605, 608, 87 S. Ct. 1209, 18 L. Ed. 2d 326. Due process requires not only that the initial confinement be founded upon a constitutionally adequate basis, but also that such confinement be terminated once that foundation no longer exists. *O'Connor* v. *Donaldson,* 422 U.S. 563, 575, 95 S. Ct. 2486, 45 L. Ed. 2d 396; *Fasulo* v. *Arafeh,* 173 Conn. 473, 476, 378 A.2d 553. Although we do not decide that the admissibility of current evidence into a probate appeal is constitutionally required, it is our belief that the policy reasons underlying

these constitutional considerations give added weight to our decision that such evidence should be allowed.

The defendant urges that if the plaintiff wished to introduce evidence of his condition as it had evolved after the probate hearing, he could have resorted to General Statutes § 17-201 and applied for a writ of habeas corpus. While this is indisputable, the existence of one procedure for the discharge of a mental patient does not foreclose alternative procedures. The question to be addressed is not whether alternatives exist, but whether the procedure proposed by the plaintiff is unavailable. We cannot say that it is. The approach we confirm is not unknown to the courts.[3] It is supported by statutory and constitutional considerations, and indeed, by considerations of judicial economy. Under our ruling, the Superior Court will be allowed to consider both the validity of the initial commitment, as well as its current validity. Law, logic and policy combine to render the allowance of evidence on the plaintiff's condition, as it exists at the time of the Superior Court hearing, permissible.

The defendant raises the issue of whether passage of 1977 Public Acts, No. 77-595, renders the constitutional issues raised by the plaintiff on this appeal moot. Since we need not address the constitutional issues, we decline to do so. To aid the trial court

[3] Appeals in equity traditionally open the inquiry to circumstances as they existed at the time of the appeal. *Public Utilities Commission* v. *United Fuel Gas Co.*, 317 U.S. 456, 63 S. Ct. 369, 87 L. Ed. 396, rehearing denied, 318 U.S. 798, 63 S. Ct. 557, 87 L. Ed. 1162. Although a commitment proceeding is not equitable in nature, the issue involved is similar to one in equity, requiring cognizance of changing circumstances. See also 5 Am. Jur. 2d, Appeal and Error, § 728. This is especially so when the issue involves a deprivation of liberty.

on remand, however, we note that on the issue of whether commitment is warranted as of the time of the hearing on remand, the new statutes, effective October 1, 1977, are applicable. As to the issue of whether commitment was warranted at the time of the probate hearing, those statutes then existing apply.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.